ADDISON STATE BANK, Plaintiff-Appellee, v. NATIONAL MAINTE-
NANCE MANAGEMENT, INC., Defendant (Clayton Boyd, Defendant-Ap-
pellant; Steven C. Boyd, Defendant).

Second District No. 2—87—1103

Opinion filed September 27, 1988.

DUNN, J., dissenting.

John W. Purney, of Roselle, for appellant.

Louis A. Varchetto and Bryan S. Estes, both of Guerard, Kalina, Musial,
Ulrich & Varchetto, of Wheaton, for appellee.

JUSTICE REINHARD delivered the opinion of the court:
Defendant, Clayton P. Boyd, appeals from an order of the circuit
court of Du Page County which granted a motion for summary judg-

ment in favor of plaintiff, Addison State Bank. On appeal, defendant contends that the trial court erred in granting plaintiff's motion for summary judgment because there remained an unresolved issue of fact with respect to whether defendant signed a guaranty agreement in an individual or representative capacity.

Plaintiff filed suit against defendants, National Maintenance Management, Inc. (National), Steven C. Boyd, and Clayton P. Boyd, alleging that National, through Steven and Clayton Boyd, executed a note and security agreement to plaintiff for which plaintiff lent National $35,000 for the purchase of a street sweeper. The complaint further alleged that both Boyds personally guaranteed the loan and that National was in default of the terms of the note. The signature portion of the note and security agreement listed National and was signed by "Clayton P. Boyd President" and "Steven C. Boyd." On the reverse side of the document was a guaranty agreement which provided as follows:

"GUARANTY

**OBLIGATIONS OF GUARANTOR**

FOR VALUE RECEIVED, the guarantor, jointly and severally, guaranties absolute and unconditional prompt payment when due, whether at maturity, by acceleration or otherwise, of the liabilities defined in this note. The term 'guarantor' as used in this guaranty includes all of the guarantors of this note and, though used in the singular, will include all who sign this guaranty. After the occurrence of an event of default, each guarantor further agrees to pay all costs of collection, legal expenses and attorneys' fees, incurred or paid by the holder in the collection of any liabilities defined in this note and in the enforcement of this guaranty."

The guaranty agreement was signed "by Clayton P. Boyd Pres." and "by Steven C. Boyd."

During the course of the litigation, a settlement agreement was entered into between plaintiff and Steven Boyd. Thereafter, plaintiff filed a motion for summary judgment against Clayton Boyd on the guaranty agreement. Attached to the motion was the affidavit of Robert Slowinski, a vice-president of plaintiff, which states, in pertinent part, that National was in default on the note, that the collateral securing the loan had been sold, that $22,247.20 was due and owing, and that defendant had personally guaranteed the note.

Clayton Boyd answered the motion, arguing that he had no personal liability under the note and guaranty agreement. He further filed his own affidavit in which he stated, in pertinent part, that plain-

tiff had prepared the document, that an employee of plaintiff asked him to sign the front of the agreement, which he did by signing "Clayton P. Boyd, President," that the employee asked him to sign the reverse side, which he did by signing "by Clayton P. Boyd Pres.," that he signed both sides of the document for National in his capacity as president, not in an individual capacity, and that the employee of plaintiff looked at both sides after his signatures were placed thereon and did not ask him to sign again.

The circuit court granted summary judgment in favor of plaintiff for $22,247.20 plus attorney fees. Following the denial of his motion for reconsideration, defendant Clayton Boyd has appealed.

Defendant contends on appeal that the capacity in which he signed the guaranty agreement is a question of material fact which precluded the circuit court's entry of summary judgment. He maintains that he signed the guaranty as "by Clayton P. Boyd Pres.," which indicates his representative capacity, that his affidavit states he signed as a representative of National, not individually, and that an employee of plaintiff was present when he signed and did not ask him to change anything or delete the word "Pres." Plaintiff responds that the circuit court was correct in determining as a matter of law that defendant's signature with the word "Pres." following it did not discharge defendant's individual liability under the guaranty. Plaintiff further argues that to accept defendant's claim that he signed in a representative capacity would render the guaranty meaningless because a guaranty, by definition, is a third party's promise to answer for payment of an obligation if the first person primarily liable fails to perform an obligation.

■ Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c).) The court's task on such a motion is not to resolve a disputed factual question, but rather to determine whether one exists. (*Puttman v. May Excavating Co.* (1987), 118 Ill. 2d 107, 112, 514 N.E.2d 188.) While use of the summary judgment procedure is to be encouraged as an aid in the expeditious disposition of a lawsuit, it is a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240, 489 N.E.2d 867.) In determining the existence of a genuine issue of material fact, courts must consider the pleadings, depositions, admissions, exhibits, and affidavits on file in the case and must construe them strictly against the movant and liberally in favor of the opponent. *Purtill*, 111 Ill. 2d at 240, 489 N.E.2d at 871.

■ In Illinois, the law is that, where the language in the body of a guaranty agreement conflicts with the apparent representation by the officer's signature of the capacity in which he signed, an issue of fact as to the agent's intent arises, which is an issue for the trier of fact to determine. (*Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 315-16, 472 N.E.2d 411; see *Knightsbridge Realty Partners, Ltd.-75 v. Pace* (1981), 101 Ill. App. 3d 49, 53, 427 N.E.2d 815.) Where language in the body of a guaranty agreement conflicts with the apparent representation by the agent's signature, the document is reasonably susceptible to more than one meaning and extrinsic evidence should be considered in determining the intent of the parties. (*Mid-City Industrial Supply Co. v. Horwitz* (1985), 132 Ill. App. 3d 476, 481-82, 476 N.E.2d 1271.) Under section 3—403(2)(b) of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 3—403(2)(b)), cited by the parties, where the agent names his principal or signs in a representative capacity, but does not do both, parol evidence is admissible between the immediate parties, and it is a question of fact as to whether a signature indicating a possible representative capacity shows a representative capacity. *J. P. Sivertson & Co. v. Lolmaugh* (1978), 63 Ill. App. 3d 724, 726, 380 N.E.2d 520; *Wolfram v. Halloway* (1977), 46 Ill. App. 3d 1045, 1048, 361 N.E.2d 587; see Ill. Ann. Stat., ch. 26, par. 3—403, Illinois Code Comment, subsec. (2), par. (b), at 222 (Smith-Hurd 1963).

■ Following this authority, we conclude in the case before us that a genuine issue of material fact exists as to the capacity in which defendant signed the guaranty agreement. Both the defendant's signature with the abbreviations "Pres." following it and defendant's affidavit stating he signed the guaranty agreement in his representative capacity rather than in his personal capacity create an issue of fact as to whether defendant signed in a representative capacity.

Plaintiff relies on several decisions from foreign jurisdictions where, in somewhat similar factual circumstances, the apparent conflict in a guaranty agreement caused by a signature in a representative capacity has been decided as a matter of law that the signator's obligation was a personal one because to permit a corporation, through its own officer, to guarantee its own debt would render the guaranty meaningless. (See *Kordick v. Merchants National Bank & Trust Co.* (Ind. App. 1986), 496 N.E.2d 119; *Consolidated Beef Industries, Inc. v. Schuyler* (1986), 239 Kan. 38, 716 P.2d 544; *Roy v. Davidson Equipment, Inc.* (Fla. App. 1982), 423 So. 2d 496.) Cases from other jurisdictions, however, are not controlling where, as here, they are at variance with the decisions of the Illinois courts and are

persuasive only when Illinois courts have not passed upon the particular point in issue. See *Northwestern University v. Industrial Comm'n* (1951), 409 Ill. 216, 222, 99 N.E.2d 18; see also *Orsini v. Industrial Comm'n* (1987), 117 Ill. 2d 38, 48-49, 509 N.E.2d 1005.

The judgment of the circuit court of Du Page County is reversed and the cause remanded for further proceedings.

Reversed and remanded.

INGLIS, J., concurs.

JUSTICE DUNN, dissenting:

I respectfully dissent. Initially, it should be noted that any conclusional matter offered in support of a motion for summary judgment is inadmissible and cannot be considered in deciding the motion. (107 Ill. 2d R. 191; *Milwaukee Cheese Co. v. Cornerstone Inn, Inc.* (1986), 142 Ill. App. 3d 840, 843, 492 N.E.2d 231, 233.) Both parties have submitted affidavits containing conclusional statements: Slowinski's affidavit concludes that defendant signed the guaranty in an individual capacity; defendant's affidavit concludes that he signed the guaranty in a representative capacity. Therefore, we should disregard the conclusional statements contained in the affidavits of the parties and look to the guaranty agreement to determine the intent of the parties.

Generally, the rules of construction applicable to contracts apply to guaranty agreements. (*Milwaukee Cheese Co.*, 142 Ill. App. 3d at 843, 492 N.E.2d at 233.) The meaning of a guaranty is a question of law which the court determines, and if the guaranty is unambiguous, it must be enforced as written. *Milwaukee Cheese Co.*, 142 Ill. App. 3d at 843, 492 N.E.2d at 233.

In construing the provisions of the guaranty agreement, I find persuasive the case of *Kordick v. Merchants National Bank & Trust Co.* (Ind. App. 1986), 496 N.E.2d 119, which has facts nearly identical to those of this case. In *Kordick*, Nicholas Kordick was president, chief executive officer, and sole stockholder of the Fortune Personnel Agency. Fortune obtained a loan from Merchants National Bank (bank) which was secured by Fortune's corporate savings account. After several renewals, Fortune executed a promissory note and security agreement to secure its loan. Kordick executed a guaranty with the bank to secure payment of the promissory note. Kordick signed the guaranty "Nicholas Kordick President." *Kordick*, 496 N.E.2d at 120-21.

After Fortune defaulted on its promissory note, the bank filed

suit against Kordick based on the guaranty agreement. Kordick argued that the guaranty was an obligation only of Fortune and not him personally. The Indiana Court of Appeals stated that three parties are required to execute a guaranty agreement: a borrower, lender, and guarantor. The court determined that Kordick's construction of the guaranty agreement must fail because permitting Fortune to guarantee its own debt would render the guaranty meaningless. Additionally, by the express terms of the agreement, the guarantor's obligation was not affected by the release of the borrower (Fortune). The court stated that if it construed the guaranty such that the borrower (Fortune) were the guarantor, it would create an obvious paradox. *Kordick*, 496 N.E.2d at 123-24.

We should likewise conclude that it would be meaningless for National to guarantee its own debt because to do so would add nothing to its obligation to plaintiff. Furthermore, the guaranty agreement provides that the guarantor's obligation shall be unaffected by the release of any person primarily or secondarily liable on the installment note. If we accept defendant's assertion that National guaranteed the installment note, an obvious paradox would be created because National could be released from the note, yet bound to pay the note under the guaranty. We should decline to adopt such a strained construction of the guaranty agreement.

To give the guaranty its proper meaning, it should be determined that defendant signed it in his personal capacity. (Compare *Consolidated Beef Industries, Inc. v. Schuyler* (1986), 239 Kan. 38, 716 P.2d 544; *Roy v. Davidson Equipment* (Fla. App. 1982), 423 So. 2d 496.) In construing the evidence strictly against plaintiff, defendant has failed to demonstrate a genuine issue of material fact with respect to the capacity in which he signed the guaranty. Consequently, I believe the trial court properly granted defendant's motion for summary judgment.

Defendant directs our attention to several other cases in support of his position; however, each of these cases is distinguishable. In both *Kankakee Concrete Products Corp. v. Mans* (1980), 81 Ill. App. 3d 53, 400 N.E.2d 637, and *Wolfram v. Halloway* (1977), 46 Ill. App. 3d 1045, 361 N.E.2d 587, the court determined the capacity in which the respective defendants signed certain notes, not a guaranty agreement. Therefore, both *Kankakee Concrete Products* and *Wolfram* are factually dissimilar from this case and unsupportive of defendant's position.

The majority relies heavily on *Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 472 N.E.2d 411. In that case, the defend-

ants owned two corporations which obtained insurance coverage from the plaintiff. After the corporations fell behind in their premium payments, the defendants signed a guaranty agreement with the plaintiff. Both corporations' names were affixed to the guaranty, and the defendants' signatures on the guaranty were followed by their respective corporate title. The plaintiff filed a complaint which sought to enforce the guaranty agreement personally against the defendants. A jury found that the guaranty agreement was a corporate obligation, not a personal obligation. On appeal, plaintiff asserted that the trial court should have granted it a directed verdict because the guaranty agreement personally obligated the defendants as a matter of law. In rejecting the plaintiff's contention, our supreme court stated that where the language in the body of the document conflicts with the corporate representative's signature, an issue of fact arises as to the agent's intent which the jury must determine. *Wottowa*, 104 Ill. 2d at 316, 472 N.E.2d at 413.

Here, defendant asserts that he, like the defendants in *Wottowa*, raised an issue of fact as to the intent with which he signed the guaranty. I disagree. In *Wottowa*, it was conceivable that one of the corporations could have guaranteed the obligations of the other; hence, neither corporation would have guaranteed its own obligation. In this case, unlike *Wottowa*, it is clear that if defendant signed the guaranty in a representative capacity, National would have guaranteed its own debt. Therefore, the principles set forth in *Wottowa* do not apply to the facts of this case.

Finally, I note that the parties have directed our attention to section 3—403 of the Uniform Commercial Code—Commercial Paper (UCC) (Ill. Rev. Stat. 1987, ch. 26, par. 3—101 *et seq.*). It is well settled that a loan guaranty agreement cannot be classified as a negotiable instrument. (See *Federal Deposit Insurance Corp. v. Hardt* (C.D. Ill. 1986), 646 F. Supp. 209, 211; *Ishak v. Elgin National Bank* (1977), 48 Ill. App. 3d 614, 617, 363 N.E.2d 159, 161.) Therefore, the provisions of the UCC do not apply to the guaranty agreement.

Accordingly, for the reasons expressed above, I would affirm the trial court's order granting the plaintiff's motion for summary judgment.