# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

March 5, 2013

No. 11-41006

Lyle W. Cayce
Clerk

PLAYBOY ENTERPRISES, INCORPORATED,

Plaintiff–Appellee,

v.

JAVIER SANCHEZ-CAMPUZANO, Individually and as agent of Grupo Siete
S.A., Incorporated; SPORTS TIME, INCORPORATED; GROUP SEVEN
COMMUNICATIONS,

Defendants–Appellants.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 7:01-CV-226

Before REAVLEY, PRADO, and OWEN, Circuit Judges.

PER CURIAM:[*]

This appeal involves the declaration of rights and enforcement of a guaranty agreement. Appellee, Playboy Enterprises Inc. (PEI), brought suit in district court to enforce a guaranty agreement against Appellants, Javier Sanchez-Campuzano (Sanchez), Sports Time, Inc., and Group Seven

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-41006

Communications. The district court granted summary judgment, holding that the agreement is enforceable and Sanchez is personally liable. We affirm.

**I**

PEI sought a declaration in the district court that Sanchez, Grupo Siete S.A., Grupo Siete S.A. de C.V., Grupo Siete Comunicaciones, S.A. de C.V., Paul Siegel, Sports Time, Inc, and Group Seven Communications were required to guaranty the performance of obligations under a License Agreement between PEI and Editorial Caballero, S.A. de C.V. (EC). The district court dismissed Grupo Siete S.A., Grupo Siete S.A. de C.V., Grupo Siete Comunicaciones, S.A. de C.V., and Paul Siegel. No one has appealed these dismissals. The only remaining Appellants are Sanchez, Sports Time, Inc., and Group Seven Communications.

PEI entered into a License Agreement with EC and Grupo Siete International, Inc. (GSI) to publish a Spanish language version of *Playboy* magazine in Mexico and to distribute it in Mexico and the United States. Sanchez is the owner and president of EC. Before entering into the License Agreement, PEI required a Guaranty Agreement from EC's parent company, Grupo Siete S.A., and GSI's parent company, Sports Time, Inc. Both parties obliged.

The Guaranty Agreement is in letter form, addressed to PEI, and states:

> In order to induce you to enter into a License Agreement (a copy of which is annexed hereto) between yourselves as licensor and Editorial Caballero, S.A. ("Caballero") as licensee, for a Mexican language edition of PLAYBOY Magazine (the "Foreign Edition"), the undersigneds hereby guarantee, without any limitation of any kind, the performance of Caballero of all of the terms and conditions of said License Agreement and, therefore, undertake to be responsible to you, jointly and severally with Caballero for all liabilities of Caballero arising out of its obligations under or in connection with said License Agreement or by reason of any breach thereof; and

No. 11-41006

> This guarantee and agreement shall remain in full force and may be called upon by you without your being required to commence any proceedings of any nature against Caballero.

The letter was dated September 10, 1996 and was signed on November 7, 1996 by Sanchez as president of "Grupo Siete S.A., Inc." and by Siegel as chairman of "Sports Time, Inc."

In 2001, PEI sued Appellants to enforce the Guaranty Agreement and moved for partial summary judgment and declaratory relief. The district court abated the action pending resolution of an appeal in Texas state court concerning the rights and obligations of PEI, EC, and GSI under the License Agreement. After two trials, the state court action resulted in a final judgment in which the jury returned a verdict relieving PEI of liability and finding that EC had breached the License Agreement and had committed fraud against PEI.

After final judgment was entered in state court, the district court granted PEI's motion for partial summary judgment and declaratory relief, holding that the Guaranty Agreement is an absolute guaranty under which Sanchez, Sports Time, Inc., and/or Group Seven Communications are required to perform or ensure performance of EC and to jointly and severally indemnify PEI for all liabilities in connection with EC's breach of the License Agreement. Appellants appeal the district court's judgment on multiple grounds.

## II

The district court construed the Guaranty Agreement as an absolute guaranty and held that Appellants were responsible for EC's liabilities to PEI arising under or in connection with EC's breach of the License Agreement. Appellants claim that summary judgment was improper because both the Guaranty Agreement and License Agreement are ambiguous in multiple ways. Appellants also rely on several contract defenses to claim that the underlying

No. 11-41006

License Agreement is unenforceable, thus rendering the Guaranty Agreement a nullity.

## A

The Guaranty Agreement references a license agreement and states that a copy of that agreement is attached to the Guaranty Agreement. However, nothing is attached to the original or to any authentic copy of the Guaranty Agreement. Appellants claim that this, along with conflicting dates within the Guaranty Agreement and the License Agreement relied upon by PEI, creates an ambiguity as to what document or iteration of the License Agreement was actually guaranteed.

Although the type-written dates are different on the agreements—the Guaranty Agreement is dated September 10, 1996, and the License Agreement is dated November 1, 1996—as noted by the district court, the uncontroverted evidence reveals that Sanchez signed the License Agreement on November 7, 1996 and that Sanchez and Siegel signed the Guaranty Agreement in one another's presence on the same date.

"The essential terms of a guaranty agreement are (1) the parties involved, (2) a manifestation of intent to guaranty the obligation, and (3) a description of the obligation being guaranteed."[1] The description of the obligation does not have to include all of the terms of the underlying agreement; as long as the underlying agreement is identifiable, the guaranty is enforceable.[2] Here, the Guaranty Agreement identifies the licensor and licensee to the underlying agreement, identifies the parties acting as guarantors, manifests an intent to

---

[1] *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 261 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[2] *See id.* (holding that a guaranty agreement describing the obligation as "all outstandings and liabilities of [debtor] with [creditor] as well as future shipments" identified the essential terms of the underlying agreement).

guaranty the License Agreement, and describes the subject of the License Agreement. Additionally, throughout the litigation, the parties relied on the same License Agreement and offered no facts to suggest that there could be a different agreement fitting the same description. Thus, notwithstanding differing dates and the failure to attach the License Agreement, no ambiguity exists as to what agreement was being guaranteed.

## B

Appellants also argue that the Guaranty Agreement is ambiguous because the License Agreement includes GSI, but the Guaranty Agreement only seeks to enforce the License Agreement against EC, leaving EC susceptible to liability for GSI's actions. Similarly, Appellants claim that because PEI argued in the state court trial that GSI breached the License Agreement, there is a fact issue as to whether the Guaranty Agreement has even been triggered by EC.

The district court correctly rejected both of these arguments. At no time has PEI attempted to enforce the Guaranty Agreement for anything other than EC's obligations and liabilities to PEI. Consequently, the district court's order was only directed at enforcement of the License Agreement against EC, and the district court held it need not address any alleged ambiguity concerning GSI. PEI has not mentioned the liabilities of GSI nor does the Guaranty Agreement require that GSI breach anything.

We also agree with the district court that the argument that the Guaranty Agreement has not been triggered is without merit. The agreement guarantees "the performance of Caballero [EC] of all of the terms and conditions of said License Agreement." Appellants admitted before the district court that EC breached the License Agreement. Thus, by Appellants' own admission, there is no question that the Guaranty Agreement has been triggered.

## C

No. 11-41006

The Guaranty Agreement states it is "without limitation of any kind" and "may be called upon by [PEI] without . . . being required to commence any proceedings of any nature against [EC]." The district court held that the language of the Guaranty Agreement "unambiguously created an absolute or unconditional guaranty under Texas law . . . contingent upon EC's default under the License Agreement and not upon any other condition." We agree.

When a guaranty is unqualified and expresses no conditions to trigger the payment or performance, it is an "absolute guaranty."[3] The Guaranty Agreement fits this description—it negates any limitations and specifically states that it may be called upon without having to take any actions against EC. As correctly stated by the district court, the general rule is that an absolute guaranty imposes liability on the guarantor even if the underlying obligation cannot be enforced against the principal.[4] Indeed, "in [the] case of an absolute guaranty, no demand upon the principal debtor is necessary . . . and the Breach of the principal's contract to pay the sum promised ipso facto imposes upon the guarantor a complete liability."[5]

This interpretation is significant for several reasons. First, as discussed above, Appellants claim that PEI's attempt to enforce the License Agreement against GSI in the state court trial bars PEI's enforcement of the Guaranty Agreement against Appellants. Appellants have cited no support for such a proposition, and the Guaranty Agreement states that PEI may enforce the performance of EC against Appellants without commencing any actions against

---

[3] *Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 877 (Tex. 1976).

[4] *See id.* (absolute guarantors of promissory note were liable to holder even though the signature of the purported maker was forged); *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 222 (Tex. 1979) (guarantor could not interpose usury defense of principal debtor); *see also U.S. v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1252 (5th Cir. 1985).

[5] *Universal Metals & Mach., Inc.*, 539 S.W.2d at 878 (quoting *El Paso Bank & Trust Co. v. First State Bank*, 202 S.W. 522, 524 (Tex. Civ. App.—El Paso 1918, no writ)).

No. 11-41006

EC.  Second, Appellants rely on multiple contract defenses to the License Agreement to argue that the Guaranty Agreement is unenforceable.  However, even if there are contract defenses that EC may assert, they are not available to Appellants as absolute guarantors.[6]

Appellants reject this interpretation, vaguely claiming that the language of the Guaranty Agreement is not clearly unconditional and is subject to multiple defenses.  However, they fail to discuss any language to support this position, make no attempt to articulate their own interpretation, and cite no contrary case law.  The agreement created an absolute guaranty, rendering the underlying contract defenses that EC may assert unavailable to Appellants.

**D**

Appellants also claim that a supposed "Renegotiated Payment Plan Agreement" changed the terms of the License Agreement by extending payment dates, thus discharging any guarantors from liability.  In Texas, if the creditor and principal debtor vary the terms of their contract in any material degree, a new contract has been formed upon which the guarantor is not obligated or bound.[7]  Defenses based on changes to the underlying obligation and thus changes to the guaranty agreement are termed suretyship defenses.[8]  "A suretyship defense is an affirmative defense, and the burden of proving a change rests on the guarantor."[9]  "The suretyship defenses arise by operation of law, and absent an express waiver, even an absolute and unconditional guarantor may

---

[6]  *Id.*; *see also Farmers & Merchs. State Bank of Krum v. Reece Supply Co.*, 79 S.W.3d 615, 619 (Tex. App.—Eastland 2002, pet. denied) (holding absolute guarantor could not assert defenses of offset and failure of consideration for the underlying contract).

[7] *McKnight v. Va. Mirror Co.*, 463 S.W.2d 428, 430 (Tex. 1971).

[8]  *U.S. v. Vahlco Corp.*, 800 F.2d 462, 466 (5th Cir. 1986).

[9]  *Id.* (citing *Crimmins v. Lowry*, 691 S.W.2d 582, 585 (Tex. 1985)).

assert them."[10]  Whether a guaranty is unconditional "has nothing to do with whether the guarantor waives asserting the suretyship defenses; the two are simply not related."[11]

On appeal, Appellants merely state that "[i]nasmuch as . . . PEI renegotiated the terms and conditions of the License Agreement when it entered into the Renegotiated Payment Plan Agreement, this material change in the terms of the so-called guarantee was sufficient to release and discharge any guarantors from any liability or other responsibility as a matter of law." Appellants fail to articulate why the parties agreeing to pay amounts that were already due under the contract is a material change.  As the district court stated, "broad and conclusory allegations that PEI materially changed the terms of the License Agreement by entering into the Renegotiated Payment Plan Agreement do not defeat summary judgment."

## III

Sanchez claims that the district court should have dismissed PEI's claims against him because he was never personally served.  Sanchez admits that he received service, but claims that such service violated Rule 4 of the Federal Rules of Civil Procedure, the Inter-American Convention on the Service of Documents, the Hague Convention, the Foreign Sovereign Immunities Act, and Mexican law and sovereignty.  Rather than address the substance of his service argument, Sanchez merely states, "[t]his issue [has] been extensively briefed before the Trial Court . . . .  Such prior briefing is incorporated herein by reference."  "A litigant's failure to provide legal or factual analysis results in

---

[10] *Id.* (citing *Shepherd v. Eric Schuster Corp.*, 424 S.W.2d 693, 696-97 (Tex. App.—Houston [14th Dist.] 1968, writ ref'd n.r.e.)).

[11] *Id.*

waiver."[12]  By failing to address his arguments in the body of his brief, Sanchez has waived his claim of insufficient service.

## IV

Sanchez signed the Guaranty Agreement as, "Javier Sanchez, President," and the words "Grupo Siete S.A., Inc." are printed above his signature.  When PEI filed suit in federal court to enforce the Guaranty Agreement against Grupo Siete S.A., Inc., Sanchez responded that rather than being an actual entity, Grupo Siete S.A., Inc. merely "refer[red] to a trademark, image, brand, or trade name of the Sanchez family."  Sanchez then argued that he signed the Guaranty Agreement in his capacity as President of EC, the company that had entered into the License Agreement with PEI.

The district court found no genuine issue of material fact as to whether Sanchez signed in his individual capacity because Sanchez admitted that Grupo Siete S.A., Inc. does not exist, and, under Texas law, "an agent who executes a contract on behalf of a fictitious principal is [] personally liable on the contract for failure to accurately disclose his principal."[13]  The district court also rejected Sanchez's argument that he signed on behalf of EC because such a construction would render the Guaranty Agreement a nullity—treating the guarantor and the borrower as the same entity would negate the purpose of a guaranty.

On appeal, Sanchez argues that the Guaranty Agreement cannot be enforced against him individually because (1) Illinois law should have been applied, and (2) there is a fact issue as to whether PEI knew that Sanchez signed on behalf of EC.

---

[12] *N.W. Enters. Inc. v. City of Houston*, 352 F.3d 162, 183 n.24 (5th Cir. 2003); *see also SEC v. Banner Fund Int'l*, 211 F.3d 602, 613 (D.C. Cir. 2000) (holding that the defendant waived an argument for improper service under the Hague Convention for inadequate briefing on appeal).

[13] *Stacy v. Energy Mgmt. Grp. Ltd., Inc.*, 734 S.W.2d 149, 150 (Tex. App.—Houston [1st Dist.] 1987, no writ).

No. 11-41006

## A

Before the district court, Sanchez briefed Texas law in his response to PEI's motion for summary judgment. In a single footnote, Sanchez stated that "Inasmuch as the Licensing Agreement specifies that Illinois law applies, it stands to reason that Illinois law also applies to the Guaranty Agreement." However, Sanchez argued in the same footnote that "the common law of both Texas and Illinois follow the same general rules." He then reiterated that Texas and Illinois law are the same by citing a single Illinois case at the end of a string citation of Texas cases. Now, on appeal, Sanchez argues that the district court should have applied Illinois law to the Guaranty Agreement.

Recognizing that its jurisdiction was based on diversity, the district court correctly held that it must apply the substantive law of the forum state in determining the rights and obligations of the parties to the Guaranty Agreement.[14] Thus, Texas choice-of-law rules apply in this case.[15] However, before the court undergoes a choice-of-law analysis, it should first determine if the laws are in conflict.[16] If the result would be the same under the laws of either jurisdiction, there is no need to resolve the choice-of-law question.[17] This is because Texas courts presume that other states' laws are the same as its own; thus, the party advocating the use of a different state's laws bears the burden of rebutting that presumption.[18] Although federal courts must take judicial notice of the laws of every state, Texas choice-of-law rules place the burden on Sanchez

---

[14] *Lockwood Corp. v. Black*, 669 F.2d 324, 327 (5th Cir. 1982).

[15] *See id.*

[16] *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.).

[17] *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 419 (Tex. 1984)).

[18] *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 53 & n.5 (Tex. 2008).

to show how the application of Illinois law compels a result different from what Texas law would yield.[19]

With the exception of one footnote, Sanchez applied Texas law in his briefing before the district court. More importantly, Sanchez agreed with PEI in the district court that the applicable Illinois and Texas laws were the same. Now, for the first time on appeal, Sanchez argues that the district court should have applied Illinois law but still fails to brief a choice-of-law analysis, does not discuss the differences between the two jurisdictions' laws, and reiterates that his position is also meritorious under Texas law.

Unlike Texas law, Illinois law would not rule out the possibility that Sanchez signed the Guaranty Agreement on behalf of EC, the same party against whom the License Agreement would be enforced.[20] However, Sanchez neither cites this applicable Illinois law, nor does he explain the differences between the jurisdictions' laws. Conversely, he claimed below that the results would be the same under either jurisdiction's laws.

Absent some "manifest injustice," parties are generally bound by their theories of law argued in the district court.[21] "If 'manifest injustice' only meant that application of another jurisdiction's law would yield a different result, then choice of law issues could always be raised first on appeal."[22] Sanchez has not shown manifest injustice. Because Sanchez represented to the district court that the applicable Texas and Illinois laws are the same, failed then and now to undergo a choice-of-law analysis, and makes no effort to articulate the difference

---

[19] *Id.*; *see also Kucel v. Walter E. Heller*, 813 F.2d 67, 74 (5th Cir. 1987).

[20] *See Addison State Bank v. Nat'l Maint. Mgmt., Inc.*, 529 N.E.2d 30, 32-33 (Ill. App. Ct. 1988).

[21] *Am. Int'l Trading Corp. v. Petroleos Mexicanos*, 835 F.2d 536, 540 (5th Cir. 1987).

[22] *Id.*

between the laws on appeal, Sanchez has waived his choice-of-law argument and is bound by his position below.[23]

## B

All parties agree that "Grupo Siete S.A., Inc." is not an actual entity. PEI asserts that this fact only strengthens its claim that Sanchez should be held individually liable because, under Texas law, an agent that executes a contract on behalf of a fictitious principal is personally liable on the contract. Conversely, Sanchez argues that evidence was presented to the trial court that PEI knew that Sanchez intended to sign the Guaranty Agreement on behalf of EC, not Grupo Siete S.A., Inc. Sanchez points to the affidavit of his son, Marco Sanchez, stating that "my dad . . . in my presence, told Robert O'Donnell, who, at the time, was the Senior Vice-President of International Publishing for PEI, that they were only agreeing to sign the Guaranty Agreement in their representative capacities for EC and Sports Time, Inc." The district court held that there was no genuine issue of material fact regarding whether Sanchez identified the true principal for whom he was acting when he signed the Guaranty Agreement.

### 1

Sanchez points to affidavits claiming that the parties knew he intended to sign the agreement on behalf of EC, not in his individual capacity nor on behalf of Grupo Siete S.A., Inc., and relies on a Texas Uniform Commercial Code (UCC) provision that states "[w]ith respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument."[24] Despite relying on this UCC provision, Sanchez concedes in his brief that "the

---

[23] *Fruge v. Amerisure Mut. Ins. Co.*, 663 F.3d 743, 747 (5th Cir. 2011) (per curiam) ("Failure to raise an argument before the district court waives that argument, including an argument for choice-of-law analysis.").

[24] Tex. Bus. & Com. Code Ann. § 3.402(b)(2) (West 2012).

No. 11-41006

Guarantee Agreement is arguably not a negotiable instrument such that the above-quoted UCC provision does not directly apply." Indeed, "[a] guaranty agreement is not a negotiable instrument, and is not governed by the provisions of the Texas UCC."[25]

Regardless, in *Eubank v. First National Bank of Bellville*,[26] a Texas Court of Appeals addressed the same argument Sanchez makes and squarely rejected it. In *Eubank*, a bank brought suit against guarantors of a corporation's note and was granted summary judgment against the guarantors.[27] On appeal, the guarantors argued that they were not individually liable for the note because they signed in their capacity as officers of the same corporation that secured the note.[28] The court rejected this as contrary to the definition of a guaranty agreement, which is "an undertaking by a third person to another to answer for the payment of a debt, incurred by a named person, in the event that the named person fails to pay."[29] Further, it held that "a written collateral undertaking given to secure a corporate debt will be rendered meaningless if the primary debtor is found to be the only party liable under it."[30] The court also rejected the guarantor's evidence that the parties understood he was signing on behalf of the corporation securing the note because one's "subjective belief of the purpose of the guaranty agreement cannot contradict the intent of the parties expressed

---

[25] *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 260 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).

[26] 814 S.W.2d 130 (Tex. App.—Corpus Christi 1991, no pet.).

[27] *Eubank*, 814 S.W.2d at 131.

[28] *Id.* at 133.

[29] *Id.* (citing *Dann v. Team Bank*, 788 S.W.2d 182, 183 (Tex. App.—Dallas 1990, no writ)).

[30] *Id.*

No. 11-41006

within the four corners of the document."[31] Several other Texas courts of appeals have come to the same conclusion.[32]

## 2

Finally, Sanchez claims that because the parties understood he was signing on behalf of a non-existent entity, he is not personally liable. As the district court articulated, Texas law clearly rejects this argument. "[A]n agent does not escape liability by purporting to act for a nonexistent principal."[33] Instead, "one who contracts as an agent in the name of a nonexistent or fictitious principal, or a principal without legal status or existence, renders himself personally liable on the contracts so made."[34] "This is true even though the agent has disclosed *a* principal but has failed to disclose the *true* principal."[35]

Texas law rejects Sanchez's signing the Guaranty Agreement on behalf of the same entity signing the Licensing Agreement and provides no protection for signing on behalf of a fictitious principal. Thus, the district court was correct to hold Sanchez personally liable.

\*     \*     \*

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[31] *Id.* at 134.

[32] *See, e.g.*, *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 263-64 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (Frost, J., concurring); *Am. Petrofina Co. of Tex. v. Bryan*, 519 S.W.2d 484, 486-87 (Tex. App.—El Paso 1975, no writ).

[33] *Carter v. Walton*, 469 S.W.2d 462, 471 (Tex. App.—Corpus Christi 1971, writ ref'd n.r.e.).

[34] *Id.* (internal quotation marks omitted); *see also Stacy v. Energy Mgmt. Grp. Ltd., Inc.*, 734 S.W.2d 149, 150 (Tex. App.—Houston [1st Dist.] 1987, no writ) ("[A]n agent who executes a contract on behalf of a fictitious principal is also personally liable on the contract for failure to accurately disclose his principal.").

[35] *Sw. Bell Media, Inc. v. Trepper*, 784 S.W.2d 68, 71 (Tex. App.—Dallas 1989, no writ).