Nicholas F. KORDICK and Nicholas F. Kordick as Personal Representative of the Estate of Linda Kordick, Deceased, Appellants (Defendants Below),

v.

MERCHANTS NATIONAL BANK AND TRUST COMPANY OF INDIANAPOLIS, Appellees (Plaintiffs Below).

No. 4-385A66.

Court of Appeals of Indiana,
Fourth District.

Aug. 7, 1986.

William W. Knowles, Raymond L. Faust, Baker, Orgison, Bales & Knowles, Carmel, for appellants.

Gary A. Schiffli, James G. Lauck, Kroger, Gardis & Regas, Indianapolis, for appellees.

MILLER, Judge.

Nicholas Kordick appeals from the granting of a partial summary judgment against him on Merchant's claim that he was personally liable on a guaranty he signed for the debt his corporation owed Merchants. He alleges the signature was made in his representative capacity and did not personally obligate him to pay. He also questions whether this was an issue of law or fact.

We affirm.

### FACTS

Kordick was the president, chief executive officer, and sole stockholder of the F–O–R–T–U–N–E Personnel Agency of Indianapolis, Inc., a corporation for the placement of middle management executives. On July 16, 1979, Fortune obtained a loan from Merchants National Bank which was secured by the corporate savings account. After several renewals, Fortune executed a secured promissory note and security agreement, dated September 29, 1980 which gave Merchants a security interest in Fortune's accounts, accounts receivable, and funds on deposit at Merchants. At the same time, a continuing guaranty was executed by Kordick. This guaranty was signed by Kordick with the title "President" added by him, and it stated:

"In consideration of credit which MERCHANTS NATIONAL BANK & TRUST COMPANY OF INDIANAPOLIS, a national banking association ("Merchants"), may from time to time extend to F–O–R–T–U–N–E Personnel Agency of Indianap-

olis, Inc. ("Borrower"), the undersigned hereby individually, jointly and severally, and unconditionally guarantee to Merchants, its successors and assigns, the payment when due, whether by acceleration or otherwise, without presentment or demand, protest, notice of dishonor, or diligence in collection and with a right of set-off against the undersigned, together with costs of collection and reasonable attorneys' fees and without relief from valuation or appraisement laws, of the principal of and interest on all present and future indebtedness or obligations incurred by Borrower to Merchants in accordance with the terms and conditions of such indebtedness or obligations and all extensions or renewals thereof, whether direct or indirect, absolute or contingent, and evidenced by promissory notes, checks, drafts, letters of credit, bills, overdrafts, open accounts or otherwise.

Merchants may from time to time without notice to the undersigned: (a) release any collateral which is security for the indebtedness or obligations of Borrower or any other obligor or substitute or exchange any such collateral, (b) release any maker, co-maker, endorser or guarantor of the indebtedness or obligations of Borrower, (c) release, modify or compromise any liability of Borrower or any other obligor, including any of the undersigned, or the terms thereof, and (d) apply any amounts paid to it in such order of application and with such marshalling of security as it may, in its sole discretion, determine appropriate; all without the consent of or notice to the undersigned. The liability of each of the undersigned shall not be released in part or in whole by reason of the foregoing, the addition of co-makers, endorsers, guarantors or sureties, or a failure to perfect any security interest or lien in any collat-

eral securing indebtedness or obligations of Borrower or any other obligor.

This Guaranty is secured by any funds of the undersigned on deposit with Merchants and the following:

Notice of the acceptance of this Guaranty by Merchants and notice to the undersigned by Merchants as to the existence or creation of indebtedness or obligations by Borrower to Merchants are hereby waived by each of the undersigned. This Guaranty may be terminated by the undersigned only as to future indebtedness or obligations of Borrower to Merchants after the date of receipt by Merchants at its principal banking office of a written notice to such effect. The undersigned shall have no right of subrogation or contribution with respect to Borrower or any security for indebtedness or obligations of Borrower unless and until Merchants shall have received payment in full of all indebtedness or obligations of Borrower or of any of the undersigned under this Guaranty.

This Guaranty is executed under and shall be construed in accordance with the laws of the State of Indiana, and shall inure to the benefit of Merchants and its successors or assigns and shall be binding upon each of the undersigned and their respective heirs, successors, assigns and legal representatives.

IN WITNESS WHEREOF, the undersigned have executed this Guaranty on this 29th day of September, 1980.

Nicholas Kordick
President"

Record, p. 230. Fortune defaulted on the corporate note in February of 1982 and on March 10, 1982, Fortune filed Chapter 7 bankruptcy.

On August 4, 1982, Merchants filed suit against Kordick based upon his unconditional guaranty to pay the principal and interest on all indebtedness incurred by Fortune.[1] Both Kordick and Merchants

---

1. In an unrelated aspect of this suit, Kordick and his wife counterclaimed, alleging Merchants improperly imposed a master hold upon their personal funds on deposit at Merchants. They also claimed Merchants converted their joint bank account in partial satisfaction of the debt owed Merchants by Fortune and alleged Merchants slandered their credit, asking for punitive damages of $10,000,000.

moved for partial summary judgment as to Kordick's liability on the continuing guaranty. The trial court granted partial summary judgment in favor of Merchants, concluding that Kordick was personally liable on the guaranty because he signed it in an individual capacity.

Kordick appeals,[2] raising two issues:

(1) Was the continuing guaranty signed by Kordick a personal or corporate obligation; and

(2) Was this issue properly a question of law for the court or of fact for the jury.

### DECISION

The test for granting a summary judgment, as stated by our supreme court, is as follows:

"If pleadings, depositions, answers to interrogatories, admissions on file and testimony show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law, a Motion for Summary Judgment shall be granted. *Woodward Ins., Inc. v. White,* (1982) Ind., 437 N.E.2d 59. The motion should be resolved in favor of the party opposing the Motion for Summary Judgment if there is any doubt as to the existence of a material factual issue. *Woodward Ins., Inc., supra; Klinger v. Caylor,* (1971) 148 Ind.App. 508, 267 N.E.2d 848. The contents of all pleadings, affidavits and testimony are liberally construed in the light most favorable to the non-moving party. *Woodward Ins., Inc., supra.* Summary judgment is not an appropriate vehicle for the resolution of questions of credibility or weight of the evidence, or

conflicting inferences which may be drawn from undisputed facts. *English Coal Co., Inc. v. Durcholz,* (1981) Ind. App., 422 N.E.2d 302."

*Bell v. Northside Finance Corp.* (1983), Ind., 452 N.E.2d 951, 953. Kordick contends that he—and not Merchants—was entitled to judgment as a matter of law because the continuing guaranty was an obligation only of Fortune and not him personally. In addition, Kordick argues the guaranty was ambiguous and involved material issues of fact so that the question was properly one for the jury and not the trial court.

In determining the legal effect of Kordick's signature on the continuing guaranty, Kordick and Merchants agree that the interpretation of a guaranty is governed by the same rules applicable to other contracts. *McEntire v. Indiana National Bank* (1984), Ind.App., 471 N.E.2d 1216. Kordick, contends, however, that this area of the law has been codified by the Indiana Uniform Commercial Code, IND. CODE 26–1–3–403. This section provides:

"(1) A signature may be made by an agent or other representative, and his authority to make it may be established as in other cases of representation. No particular form of appointment is necessary to establish such authority.

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

**2.** Although the granting of Merchants' motion for partial summary judgment is an interlocutory order, our court has jurisdiction to decide the issues raised by Kordick due to Indiana Rules of Procedure, Appellate Rule 4(B)(6) which states:

"[A]ppeal from interlocutory orders shall be taken to the Court of Appeals in the following cases:

\* \* \* \* \* \*

(6) Any other interlocutory order, if the trial court certifies and the court on appeal or a judge thereof finds on petition that:

(a) The appellant will suffer substantial expense, damage or injury if the order is erroneous and the determination thereof is withheld until after judgment, or

(b) The order involves a substantial question of law, the early determination of which will promote a more orderly disposition of the case, or

(c) The remedy by appeal after judgment is otherwise inadequate."

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but does not show that the representative signed in a representative capacity, or if the instrument does not name the person represented but does show that the representative signed in a representative capacity.

(3) Except as otherwise established the name of an organization preceded or followed by the name and office of an authorized individual is a signature made in a representative capacity."

*Id.* Kordick reasons that because the guaranty in question contains both the corporation's and Kordick's name followed by the word "President," Kordick's signature complies with I.C. 26–1–3–403(3) and the guaranty is a corporate obligation and Kordick is not personally liable.

■ The flaw in Kordick's argument, however, is the Indiana Uniform Commercial Code only governs negotiable instruments. I.C. 26–1–3–104 states:

"(1) Any writing to be a negotiable instrument within IC 26–1–3 must:

(a) be signed by the maker or drawer, and

(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation, or power given by the maker or drawer except as authorized by IC 26–1–3; and

(c) be payable on demand or at a definite time; and

(d) be payable to order or to bearer.

(2) A writing which complies with the requirements of this section is:

(a) a "draft" ("bill of exchange") if it is an order;

· (b) a "check" if it is a draft drawn on a bank and payable on demand;

(c) a "certificate of deposit" if it is an acknowledgement by a bank of receipt of money with an engagement to pay it;

(d) a "note" if it is a promise other than a certificate of deposit."

Moreover, the official comments to this chapter provide, "This Article is restricted to commercial paper—that is to say, to drafts, checks, certificates of deposit and notes as defined in Section 3–104(2)." West's AIC 26–1–3–103 comment 1. Because the continuing guaranty signed by Kordick is not a draft, a check, a certificate of deposit, or a note, it is not governed by the rules of the Indiana Uniform Commercial Code.[3] *See Associates Discount Corporation v. Elgin Organ Center, Inc.* (7th Cir.1967), 375 F.2d 97 (refusing to apply U.C.C. to contracts of guaranty which are not negotiable instruments).

■ Rather, our courts have held that the extent of a guarantor's liability is determined by the terms of his contract. *Hamilton v. Meiks* (1936), 210 Ind. 610, 4 N.E.2d 536; *Orange-Co., Inc. v. Brown* (1979), 181 Ind.App. 536, 393 N.E.2d 192. The interpretation of a guaranty is governed by the same rules applicable to other contracts. *McEntire, supra.* The terms of the guaranty should neither be so narrowly interpreted so as to frustrate the obvious intent of the parties, nor so loosely interpreted as to relieve the guarantor of a liability fairly within their terms. *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379; *Orange-Co., supra.* Finally, in interpreting a guaranty, the court must read it as a whole and give effect to all of its provisions if possible. *Loudermilk, supra; Pierce v. Yochum* (1975), 164 Ind.App. 443, 330 N.E.2d 102.

■ From the language of the guaranty in question, it is clear that three parties were involved: the lender, the borrower, and the guarantor. This is elementary because under Indiana law, three parties are required to execute a guaranty agreement

---

**3.** In arguing that the Indiana U.C.C. rules of construction are applicable to guaranty contracts, Kordick cites *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1383 as supporting this proposition. *Loudermilk,* however, does not even discuss the Indiana U.C.C. and we fail to glean any language from the decision which would support Kordick's contention.

properly.[4] *Indianapolis Morris Plan v. Sparks* (1961), 132 Ind.App. 145, 172 N.E.2d 899. The identity of the first two parties is also not difficult to discern. Merchants is the lender and Fortune the borrower.

In determining whether the guarantor is Fortune or Kordick, we find persuasive a case from the Florida Court of Appeals with almost identical facts. In *Roy v. Davidson Equipment* (1982), Fla.App., 423 So.2d 496, Roy Energy signed an equipment rental agreement with Davidson Equipment for the lease of equipment to be used in the corporation's coal mining operation. The signature read:

"LESSEE: Roy Energy Corporation
By: Robert C. Roy, Pres."

At the same time a guaranty agreement was executed which included the following language:

"The undersigned, jointly and severally, absolutely guarantee the full and prompt payment of any and every indebtedness, liability or obligation of Roy Energy Corporation arising out of such Contract.... In the event of default in payment of any amount due thereunder ... by Roy Energy Corporation ... the undersigned promise to pay the full amount of such indebtedness....
The liability of the undersigned shall not be affected by ... the discharge or release of indebtedness, liability or obligation of Roy Energy Corporation...."

This document, upon which Roy's liability was based, was signed as follows:

"ROY ENERGY CORPORATION, Guarantor

By: Robert C. Roy, President
        (Signature)    (Title)"

*Id.* at 496.

In determining that Roy's signature on the guaranty was not made in a representative capacity but personally obligated him on the guaranty agreement, the Florida court reasoned:

"The instrument to which the signature was affixed was a guarantee of the corporate indebtedness of Roy Energy Corporation. For a corporation to guarantee its own debt would add nothing to its existing obligation and would be meaningless.... Furthermore, the guarantee was the joint and several obligation of the *undersigned,* which obligation was 'not to be affected by ... the discharge or release of the indebtedness, liability, or obligation of Roy Energy Corporation,' an obvious paradox if Roy Energy Corporation were the guarantor. This language specifically negates the signature as having been made in a representative capacity."

*Id.* at 497 (citations omitted).

■ In the case at hand, it would likewise be meaningless for Fortune to guarantee its own debt because it would add nothing to its existing obligation to Merchants. Moreover, the guaranty obligation was not affected by the release of the indebtedness of the borrower—Fortune—an obvious paradox if Fortune were the guarantor. Thus, we must conclude the language of the guaranty specifically negates the signature as having been made in a representative capacity, and Kordick was personally obligated on the guaranty agreement.[5]

4. First, there are the obligor and obligee—or borrower and lender—between whom the original contract or agreement for the performance of a particular thing exists. The third party is the surety or guarantor, who promises to pay the debt of the obligor upon his default to the obligee. *Orange-Co., supra; Indianapolis Morris Plan Corp., supra.*

5. As both parties note, earlier Indiana cases recognize that when an instrument is signed by an individual maker with such words as "President," "Trustee," or "Agent" immediately following the signature, such words are considered as mere *descriptio personae*—words used merely for the purpose of identifying or pointing out the person intended and not words which intimate the obligation is to apply to him only in an official or technical character—and the agreement becomes the obligation of the person signing it. *See,* e.g., *Bayh v. Hanna* (1919), 69 Ind. 348, 122 N.E. 7.

Moreover, the facts in the case at hand parallel a federal case applying New Mexico law, *Ricker v. B–W Acceptance Corp.* (10th Cir.1965),

Kordick's second issue is whether the interpretation of the language of the guaranty was a question of law for the court or one of fact for the jury. The construction of a written contract is generally a question of law, and summary judgment is particularly appropriate because there are no issues of fact. *Ancich v. Mobil Oil Co.* (1981), Ind.App., 422 N.E.2d 1320. Nevertheless, if reasonable men would find the contract susceptible to more than one construction, ambiguity exists making summary judgment inappropriate and placing the responsibility on the trier of fact to ascertain the extrinsic facts necessary to interpret the contract. *Kleen Leen, Inc. v. Mylcraine* (1977), 174 Ind. App. 579, 369 N.E.2d 638. On the other hand, if the ambiguity arises not because of extrinsic facts, but by reason of the language used, construction of the ambiguous contract is a question of law for the trial court. *Indiana Broadcasting Corp. v. Star Stations* (1979), 180 Ind.App. 207, 388 N.E.2d 568. Here, the contract ambiguity of the effect of Kordick's signature on the guaranty could be resolved without the aid of factual determinations, and the trial court correctly granted Merchant's partial summary judgment. Therefore, we must affirm the trial court's ruling.

YOUNG, P.J., and CONOVER, J., concur.

349 F.2d 892. In *Ricker,* the president of a corporation signed the guaranty—which was strikingly similar to the one before us; i.e., numerous references to the undersigned's obligation, as here—with the word "President" following his name, and the district court granted summary judgment against him, finding him personally obligated on the guaranty. The court affirmed, holding the addition of "President" following his signature is only *descriptio personae.* The court also noted that parol evidence was not admissible to contradict the terms of the written guaranty so that no material issues of fact remained and summary judgment was proper.