**Kay FREIBURGER, Appellant (Plaintiff Below),**

v.

**BISHOP DWENGER HIGH SCHOOL and the Diocese of Fort Wayne–South Bend, Inc., Appellees (Defendants Below).**

No. 02A03–9011–CV–497.

Court of Appeals of Indiana, Third District.

April 18, 1991.

*Rail Corp.* (1990), Ind.App., 551 N.E.2d 846, 855, *reh. denied.*

Thomas M. Kimbrough, Barrett & McNagny, Fort Wayne, for appellant.

M. Scott Hall, Gallucci, Hopkins & Theisen, Fort Wayne, for appellees.

STATON, Judge.

Kay Freiburger appeals a summary judgment entered in favor of Bishop Dwenger High School and the Diocese of Fort Wayne—South Bend, Inc. She raises two issues for our review, which we rephrase as follows:

I. Whether the trial court erred in determining that Freiburger's action should be dismissed due to her failure to exhaust the available contractual remedies.

II. Whether this action should be remanded for binding arbitration.

We affirm.

Freiburger was employed as a teacher at Bishop Dwenger High School in Fort Wayne from 1978 until the events which precipitated this litigation. Due to budget constraints, Freiburger was notified by the principal, John Gaughan, that there might not be a position for her at the high school during the 1989–1990 school year. After repeated requests for a more definite assessment of her future at the high school, Freiburger was eventually notified that she would no longer have a position at the school. Pursuant to the Professional Agreement ("Agreement") between the Diocese of Fort Wayne—South Bend, Inc. and The Community Alliance for Teachers of Catholic High Schools, Inc. ("CATCH"), Freiburger requested the appointment of an ad hoc committee to review Gaughan's decision. The culmination of these proceedings was a letter from the Diocese indicating that Gaughan's decision would be upheld.

Freiburger filed suit against Bishop Dwenger High School and The Diocese of Fort Wayne—South Bend (hereinafter collectively "BDHS"), contending that the procedures employed by BDHS violated the terms of the Agreement. The trial court granted BDHS's motion for summary judgment and denied Freiburger's cross-motion for summary judgment, finding 1) that Freiburger was required to exhaust the contractual remedies agreed to by the parties before she could bring suit in court; and 2) that Freiburger failed to avail herself of the contractual grievance procedures, thereby barring her subsequent lawsuit.

On appeal, Freiburger does not challenge the trial court's threshold determination that she was required to exhaust her con-

tractual remedies before bringing suit,[1] but argues that there are two separate contractual provisions through which a party may challenge layoff procedures. She contends that because the contract was ambiguous as to whether she was required to utilize the grievance procedure before seeking judicial relief, the ambiguity created a question of fact precluding summary judgment.

On an appeal from a summary judgment, we must determine whether the record reveals a genuine issue of material fact and whether the trial court correctly applied the law. *Boone County Area Plan Com'n v. Kennedy* (1990), Ind.App., 560 N.E.2d 692, 694, *transfer denied.* Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Bischoff Realty, Inc. v. Ledford* (1990), Ind.App., 562 N.E.2d 1321, 1323. Summary judgment will be affirmed if it is sustainable upon any theory supported by the record. *Kolczynski v. Maxton Motors Inc.* (1989), Ind.App., 538 N.E.2d 275, 276, *transfer denied.*

## I.

### *Contractual Ambiguity*

Article VI of the Agreement outlines the layoff policy agreed to by CATCH and the Diocese. As a part of this policy, a procedure is implemented whereby the affected teacher may request the appointment of an ad hoc committee to review the

Principal's decision. If a member of the committee disagrees with the Principal's decision, and the decision entails the retention of a teacher with less seniority than the teacher laid off, the teacher may appeal the decision to the Superintendent of Diocesan Schools. The Superintendent's decision is final and binding. If the ad hoc committee agrees unanimously with the Principal's decision, the Principal's decision is final and binding. Nowhere does the term "grievance" appear in this Article.

Article XV of the Agreement outlines the procedure for redressing grievances. "Grievance" is defined in the Agreement as "a difference between the administration and CATCH or one or more teachers involving an alleged violation, misinterpretation or misapplication of any rules, regulation of this professional agreement or policy of the high school board which affects the teacher or teachers in their employment." Pursuant to Article XV, a teacher may initially attempt to redress a grievance by informal discussions between the Principal and teacher. If the disagreement is not resolved, a grievance committee has the opportunity to review the complaint. If the grievance is still not settled, it may be submitted to the Diocesan Appeal Board. Finally, if either party is not satisfied with the decision rendered by the Appeal Board, that party may demand binding arbitration.[2]

1. The United States Supreme Court has stated that for cases which arise under federal labor legislation, the plaintiff must exhaust all contractual remedies (such as grievance procedures) before she may bring suit in court, except in certain special circumstances. *Republic Steel Corp. v. Maddox* (1965), 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580. *See also Serstel Corp. v. Gibbs* (1981), Ind.App., 417 N.E.2d 372 (discussing the limited exceptions to this rule). However, the National Labor Relations Act (NLRA) does not apply to parochial schools. *NLRB v. Catholic Bishop of Chicago* (1979), 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533. Thus, the federal exhaustion rule likewise does not apply to employees of parochial schools. However, the Uniform Arbitration Act states that "[a] written agreement to submit to arbitration is valid and enforceable" in Indiana, evincing a legislative intent to encourage parties to settle their differences out of court. IC 34-4-2-1. The Uniform Arbitration Act is applicable

to arbitration agreements in Indiana notwithstanding the NLRA's applicability to those agreements. *See School City of East Chicago v. East Chicago Federation of Teachers* (1981), Ind. App., 422 N.E.2d 656, *transfer denied.* In addition, while the Uniform Arbitration Act does not, by its terms, make arbitration an exclusive remedy, the parties may do so by contract. *Kendrick Memorial Hosp., Inc. v. Totten* (1980), Ind.App., 408 N.E.2d 130, 135. The parties appear to have done so here.

2. Article III of the agreement sets out the rights of the Diocese and states:

It is agreed that any grievance which involves the exercise of such rights, responsibilities, and authority shall not be subject to binding arbitration except to the extent that the grievance involves an alleged violation of a specific provision of this agreement intended by the parties to be a specific limitation on the high

Freiburger contends that a reasonable reading of the Agreement does not require the aggrieved party to resort to the Article XV grievance procedures in the case of a layoff, but that a teacher need only use the procedures in Article VI. She argues that interpreting the Agreement to require her to exhaust the Article XV procedures would be "grossly repetitive" and "totally useless." She concludes that the Agreement envisions "two totally separate procedures: one to be used for layoff grievances, which results in a 'final and binding decision'; the other to review other grievances, resulting in a decision reviewable in arbitration." Appellant's Brief, p. 14. Thus, since a reasonable person could discern two procedures, but BDHS claims there is only one procedure, she contends that there is a contractual ambiguity.

Generally, the construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Slutsky–Peltz Plumbing & Heating Co., Inc. v. Vincennes Community School Corp.* (1990), Ind.App., 556 N.E.2d 344, 346. However, if reasonable persons would find the contract susceptible to more than one construction, an ambiguity exists rendering summary judgment inappropriate and placing upon the trier of fact the responsibility to ascertain the extrinsic facts necessary to interpret the contract. *Kordick v. Merchants Nat. Bank and Trust Co.* (1986), Ind.App., 496 N.E.2d 119, 125. Such a factual determination only becomes necessary when the ambiguities cannot be resolved within the four corners of the contract. *Id.* The meaning of a contract is to be determined from a reading of the contract as a whole, not from individual words, phrases or paragraphs read alone. *Fardy v. Physicians Health Rehab. Serv.* (1988), Ind.App., 529 N.E.2d 879, 884, *reh'g denied.*

Here, the trial judge found no ambiguity in the contract:

Clearly, Article XV exists to handle problems which might arise under the rest of the agreement. Plaintiff alleges that the

school's or DIOCESE [sic] rights, responsibilities, and authority.

layoff procedures were violated by the Defendants. Article XV dictates how alleged violations are to be handled. A grievance procedure is outlined and detailed. The aggrieved individual must use the collective bargaining unit to process the grievance. Article XV(D)(2)(h) provides for arbitration in the event that either party is dissatisfied with the grievance procedure. Nowhere in the CATCH agreement is any mention made of seeking relief in state court. The primary purpose in the construction of contract [sic] is to ascertain and give effect to the mutual intentions of the parties. *English Coal Co. v. Durcholz* 422 N.E.2d 302 (Ind.App.1981). The parties clearly intended to have a layoff procedure as part of the CATCH agreement *and* a grievance procedure to cover the *whole* agreement.

Record, pp. 133, 134 (emphasis in original).

We agree. Freiburger's allegation that BDHS failed to follow the prescribed procedures for layoffs clearly falls within the definition of "grievance". The Agreement envisions that disputes as to the rights and duties of the parties under the agreement are to be handled through the grievance procedures. Article VI seeks to set out the proper procedures for layoffs. Any dispute over whether these procedures were properly employed requires resort to the grievance procedures. Our finding is further supported by the "Preliminary Statement" to the agreement, which states in relevant part, "Both parties agree that the purpose and intent of this agreement is ... to provide a means for the amicable adjustment of grievances that may arise as provided herein...." Record, p. 13. Reading the Agreement as a whole, we find no ambiguity. The trial court did not err in granting summary judgment in favor of BDHS.

## II.

### Remand for Arbitration

■ Freiburger next contends that we should exercise our general power to

Record, p. 15.

"grant any other appropriate relief" under Appellate Rule 15(N)(6) to remand this action for arbitration. However, the record does not reveal that she has availed herself of the contractual conditions precedent to binding arbitration, nor has BDHS refused to arbitrate the controversy. *See* IC 34–4–2–3. Accordingly, we must decline her invitation.

Affirmed.

HOFFMAN and MILLER, JJ., concur.