**Michael BERADI, Sr., Cecil J. Buchanan and Lela N. Buchanan, Appellants–Defendants,**

v.

**HARDWARE WHOLESALERS, INC., Appellee–Plaintiff.**

No. 02A03–9305–CV–154.

Court of Appeals of Indiana, Third District.

Dec. 16, 1993.

Rehearing Denied Feb. 16, 1994.

Michael T. Yates, Moss, Crowell, Harris, Yates & Long, Fort Wayne, for appellants-defendants.

Stephen L. Fink, Barnes & Thornburg, Fort Wayne, for appellee-plaintiff.

HOFFMAN, Judge.

Appellants-defendants Michael Beradi, Sr., Cecil J. Buchanan and Lela N. Buchanan (collectively "appellants")[1] appeal the entry of summary judgment in favor of appellee-plaintiff Hardware Wholesalers, Inc. (HWI) in an action brought to collect payment for goods purchased on account by Star Lumber, Inc.

The undisputed facts disclose that HWI is a wholesale distributor of hardware and lumber products, owned by its member retail hardware and lumber dealers. Star Lumber, Inc., is a retailer of hardware and related products and was once a member owner of HWI. Star Lumber, Inc. is a Pennsylvania corporation located at Rt. 196, 395 Sterling Road, Tobyhanna, PA 18466. Beradi, and Mr. and Mrs. Buchanan are corporate officers of Star Lumber, Inc.

On May 7, 1990, Star Lumber, Inc. became a member of HWI upon the appellants' completion of a membership agreement. As a requirement of the application process, HWI requested that the appellants sign and submit a continuing guaranty along with the membership agreement. On the continuing guaranty, Beradi, the vice president of Star Lumber, Inc., signed his name with "V.P." appended to it. Mr. Buchanan, the president of the company, signed his name with "Pres." appended to it. Mrs. Buchanan signed her name but without a title appended to it.

As a further requirement of the application process, the appellants also submitted personal financial statements to be reviewed by HWI. Their combined personal net worth totaled $33,000,000.00.

---

1. The dispute here involves the question of whether Beradi and the Buchanans are the legal guarantors of Star Lumber, Inc.'s debt to Hardware Wholesalers, Inc. Although the continuing guaranty itself specifically refers to Beradi and the Buchanans as "guarantors," to avoid confusion for purposes of this appeal, we will refer to them collectively as "appellants."

After reviewing the documents submitted by the appellants, HWI extended membership to Star Lumber, Inc. By March 31, 1992, Star Lumber, Inc. had incurred an unpaid debt of $135,325.55. After the business relationship ended, HWI made unsuccessful attempts to collect payment from the company.

Accordingly, on April 20, 1992, HWI filed a two-count complaint against Star Lumber, Inc. Count I included a request for payment of $135,325.55, the amount of the debt, together with late charges accruing subsequent to March 31, 1992. Count II alleged that Beradi and the Buchanans had acted as guarantors for the Star Lumber, Inc. debt and as such were personally liable for this amount. The trial court granted summary judgment in favor of HWI on February 9, 1993, and ordered the appellants to pay $141,958.46, the balance of the outstanding account, late payment charges, attorney's fees, and the cost of the action. This appeal ensued.

The issues raised by Star Lumber, Inc. on appeal have been restated and consolidated into one issue: whether the trial court erred in granting HWI's motion for summary judgment.

■ The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law. *Chambers v. American Trans Air, Inc.* (1991), Ind.App., 577 N.E.2d 612, 614, *trans. denied.* Our standard of review is the same as that used by the trial court: whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 994. Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. Ind. Trial Rule 56(C).

The appellants contend that the trial court erred in granting summary judgment in favor of HWI. Specifically, they claim that material issues of fact exist as to whether the guaranty is ambiguous and whether the guarantee is unenforceable due to mistake.

■ The interpretation of a guaranty is governed by the same rules applicable to other contracts. *Loudermilk v. Casey* (1982), Ind.App., 441 N.E.2d 1379, 1383. In the absence of ambiguity, the construction of a guaranty is a question of law. *Id.* If the court finds that any terms of a guaranty are ambiguous, then the parties may introduce extrinsic evidence of its meaning, and interpretation of that term becomes a question of fact; a word or a phrase is ambiguous if reasonable people could differ as to its meaning. *Id.* A guaranty will be construed so as to give effect to the intentions of the parties, which it ascertains from the language of the contract in the light of the surrounding circumstances. *Id.*

■ However, in the absence of anything to indicate a contrary intention, writings executed at the same time and relating to the same transaction or subject matter will be construed together in determining the contract. *Ruth v. First Fed. S. & L. Ass'n of LaPorte* (1986), Ind.App., 492 N.E.2d 1105, 1107. The application of this rule should not be arbitrary but rather should depend upon the facts of each particular case. *Id.* at 1108.

■ It is apparent that the continuing guaranty, the membership agreement, and the two personal financial statements of Beradi and the Buchanans' were all dated May 7, 1990, and were submitted together as part of Star Lumber, Inc.'s application for membership in HWI. Accordingly, it is reasonable to conclude that these documents dealt with the same transaction and subject matter, that is, the application process, and thus may be construed together for purposes of determining the true intent of the parties to the guaranty.

The appellants argue that the continuing guaranty is ambiguous because it mistakingly refers to "Star Lumber, Co." as the principal instead of Star Lumber, Inc., the company to which they are associated. They also contend that this mistake makes the guaranty unenforceable. HWI re-

sponds by claiming that this reference is merely a scrivener's error occurring only once. HWI claims that there is no ambiguity because the proper reference to Star Lumber, Inc. is made everywhere else in the related documents.

■■■■■■ A court is permitted to reform written agreements where one party mistakenly executed a document which did not express the true terms of the agreement, and the other party acted under the same mistake or acted fraudulently or inequitably while having knowledge of the first party's mistake. *Essex Group, Inc. v. Nill* (1989), Ind.App., 543 N.E.2d 393, 396. Also, a mistake by a scrivener will permit reformation of an instrument if it is logically indicated that both parties were mistaken as to the actual contents of the instrument. *Id.*

■■■■ Here, on the first page of the membership agreement, it was made clear that the agreement was between HWI and "Star Lumber, Inc." located at Rt 196, 395 Sterling Road, Tobyhanna, PA 18466. Page two of the membership agreement also referred to the member business as "Star Lumber, Inc." The financial statements of the Buchanans and Beradi submitted with the agreement read, in relevant part, as follows:

> "The following is submitted for the purpose of procuring, establishing and maintaining credit with HWI in behalf of the undersigned for persons, firms or corporations in whose behalf the undersigned may either severally or jointly with others execute a guaranty for the account of *Star Lumber, Inc.*" (Emphasis added.)

As HWI points out, although the continuing guaranty itself referred to "Star Lumber, Co." as the retailer, the address listed for this entity was Rt 196, 395 Sterling Road, Tobyhanna, PA 18466, the same as "Star Lumber, Inc." From these undisputed facts, it is reasonable to conclude that the reference to Star Lumber, Co. on the continuing guaranty was merely a scrivener's error and that the parties intended to refer to "Star Lumber, Inc." instead. No

ambiguity exists as to the true intent of the parties, and we find unpersuasive Star Lumber, Inc.'s contention that this mere scrivener's error makes the entire guaranty unenforceable.

■■■■ The appellants also argue that the guaranty is ambiguous because Beradi and Mr. Buchanan both signed the document with their corporate offices appended to their signatures. By doing so, they argue, an ambiguity arises as to whether they signed in their personal or corporate capacities. Star Lumber, Inc. also claims that this is a mistake, again making the guaranty unenforceable.

HWI disagrees. Relying on *Kordick v. Merchants Nat. Bank and Trust Co.* (1986), Ind.App., 496 N.E.2d 119, HWI contends that the corporate titles do not indicate the nature of the obligation but rather merely aid in identifying the individuals. HWI further claims that because the guaranty refers to the appellants individually without reference to a corporate title on page one of the document and because the appellants submitted personal financial statements with and as a part of the same transaction as the continuing guaranty, there was no ambiguity.

As did the trial court, we find *Kordick* to be dispositive of this case. In *Kordick*, Fortune, a local personnel agency, obtained a loan from Merchants National Bank. After several renewals, Fortune executed a promissory note and security agreement giving the bank a security interest in its accounts. At the same time, its president, Kordick, signed a continuing guaranty with the title "President" next to his signature.

Subsequently, Fortune filed bankruptcy and defaulted on the loan. Merchants, relying upon the continuing guaranty, then brought suit against Kordick for payment of the corporate debt. After motions for partial summary judgment were filed by both parties, the trial court granted Merchant's motion for partial summary judgment concluding that Kordick was personally liable on Fortune's debt because he signed the continuing guaranty in an individual capacity.

On appeal, the *Kordick* Court noted that three parties are necessary to execute a guaranty, i.e., the obligor, the obligee—or—borrower and lender, and the guarantor. *Kordick*, 496 N.E.2d at 124. The Court found Fortune to be the borrower and Merchants to be the lender. *Id.* The Court also found that Kordick had to be the guarantor. *Id.* Reasoning that it would be meaningless for Fortune to guarantee its own debt, that is, it would add nothing to its existing obligation to Merchants, the *Kordick* Court found that Kordick must have been acting as guarantor in his individual capacity and not in his capacity as president of Fortune. *Id.*

The Court further reasoned that because the language of the guaranty specifically negated the signature as having been made in a representative capacity, Kordick was personally obligated on the guaranty agreement.[2] *Id.* In conclusion, the *Kordick* Court affirmed the decision of the trial court holding that the contract ambiguity of the effect of Kordick's signature on the guaranty could be resolved without the aid of factual determinations. *Id.* at 125.

Here, the relevant portion of the continuing guaranty reads as follows:

"In consideration of credit given or to be given or other financial accommodations afforded or to be afforded from time to time by Hardware Wholesalers, Inc., ... (hereinafter called 'HWI') to:

Retailer: Star Lumber Co.
Located at: (1) Rt 196, 395 Sterling Road
(2) Tobyhanna, PA 18466

... (herein called the 'Debtor'), the *undersigned, Michael Beradi, Sr., Cecil J. and Lela N. Buchanan (herein called 'Guarantors'), for themselves, their heirs, executors and administrators, jointly and severally* guarantee to HWI the full and prompt payment and performance at the principal office of HWI ... any and all indebtedness ... incurred by or growing out of or through the acts of Debtor in connection with business done by Debtor with HWI, and the Guarantors jointly and severally agree to pay the same.

In order to hold the Guarantors, or any of them, liable hereunder, there shall be no obligation on HWI to resort for payment or performance to the Debtor....

The Guarantors, and any of them, acknowledge that a Corporate or Business Financial Statement and *Personal Financial Statement(s)* of Debtor and Guarantors have been submitted to, and relied upon by, HWI in considerations of credit given or to be given or other financial accommodations afforded or to be afforded by Debtor by HWI...." (Emphasis added.)

Also included within the language of the guaranty was a provision requiring HWI be notified if any of the mentioned guarantors suffered a decrease in his or her personal net worth of 20%, transferred any asset having a fair market value of 20% of his or her net worth, or any other act, fact, or event which would have an adverse impact on the Star Lumber, Inc.'s or any of the guarantors' financial positions. Moreover, the language of the document made it clear that it was the guarantors' personal credit worthiness which HWI was relying upon in deciding whether to extend credit to Star Lumber, Inc.

From these facts, it is reasonable to conclude that the appellants intended to act as guarantors of Star Lumber, Inc.'s debt in their personal capacities rather than in their capacities as corporate officers. In following *Kordick*, we hold that any ambiguity in the continuing guaranty here can be resolved without extrinsic factual determinations as to the intent of appellants when they signed the continuing guaranty. Also, we find Star Lumber, Inc.'s categorization of the appellants' signatures as mistakes, meritless. There being no material issue of fact, the decision of the trial court

---

**2.** In *Kordick,* the relevant portion of the guaranty read as follows:

"'The undersigned hereby individually, jointly and severally, and unconditionally guarantee to Merchants ... the payment when due....

IN WITNESS WHEREOF, the undersigned have executed this Guaranty on this 29th day of September, 1980. *Nicholas Kordick President'*" (Original emphasis.) *Kordick,* 496 N.E.2d at 121.

granting HWI summary judgment is affirmed.

Affirmed.

GARRARD, and SHIELDS, JJ., concur.