CREATIVE RESOURCE                    )
MANAGEMENT, INC.,                     )
                                      )
        Plaintiff/Appellant,          )          Appeal No.
                                      )          01-A-01-9808-CH-00016
v.                                    )
                                      )          Davidson Chancery
BARRY SOSKIN, et al,                  )          No. 96-4024-III
                                      )
        Defendants/Appellees.         )

FILED

November 25, 1998

Cecil W. Crowson
Appellate Court Clerk

COURT OF APPEALS OF TENNESSEE


APPEAL FROM THE DAVIDSON COUNTY CHANCERY COURT

AT  NASHVILLE, TENNESSEE


THE HONORABLE ELLEN HOBBS LYLE, CHANCELLOR


WINSTON S. EVANS
PHILLIP BYRON JONES
Evans, Jones & Reynolds
1810 First Union Tower
150 Fourth Avenue, North
Nashville, Tennessee  37219
        ATTORNEYS FOR PLAINTIFF/APPELLANT


THOR Y. URNESS
JULIE C. MURPHY
Boult, Cummings, Conners & Berry
414 Union Street, Suite 1600
P. O. Box 198062
Nashville, Tennessee  37219
        ATTORNEYS FOR DEFENDANTS/APPELLEES


REVERSED AND REMANDED


WILLIAM B. CAIN, JUDGE

# O P I N I O N

Creative Resource Management, Inc. appeals a summary judgment granted in the trial court to the individual defendant, Barry Soskin.

The defendant, Nashville Pro Hockey, LLC, was a Limited Liability Company under the laws of Tennessee, with personal liability of officers, members, and other agents limited by Tennessee Code Annotated section 48-217-101.

Creative Resource Management, Inc. was a corporation under the laws of South Carolina qualified to do business in Tennessee.

Barry Soskin was president of Nashville Pro Hockey, LLC which owned the Nashville Nighthawks, a minor league professional hockey team.

On September 4, 1996, Nashville Pro Hockey, LLC contracted with Creative Resource Management, Inc. whereby CRM, for fees and other considerations set forth in the contract, provided employee leasing services to Nashville Pro Hockey, LLC. This contract provided in section XI(f): "In the body of the contract the pronouns 'we' and 'you' refer to 'CRM' and the 'client' respectively."

The contract further provided in paragraph VII(d): "By affixing my hand and seal to this agreement, I personally guarantee any and all payments payable as represented and outlined in this agreement including but not limited to payrolls, taxes (state and federal), insurance premiums, and all other fees aforementioned in paragraph VII."

Barry Soskin signed the contract for the "client" Nashville Pro Hockey, LLC. Thomas H. Demoss signed the contract for Creative Resource Management, Inc. These signatures are reproduced as follows:

Nashville Pro Hockey, LLC failed owing Creative Resource Management, Inc. $29,626.41.

Creative Resource Management brought suit against Nashville Pro Hockey, LLC and certain of its officers including Barry Soskin.

The complaint charged Soskin as a guarantor under the terms of the agreement and thus individually liable for Nashville Pro Hockey, LLC debt for $29,626.41.

Both parties filed motions for summary judgment, and after hearing, the trial court granted the motion for summary judgment of Barry Soskin, thereby holding that his signature on the contract was in a representative capacity only and not in his individual capacity.

The only issue on appeal is whether or not Barry Soskin signed the contract only in a corporate capacity and not as a guarantor.

We conclude from the language of the instrument itself that Barry Soskin is a guarantor and is liable on his guaranty.

First of all, a specific provision of the contract provides that the pronouns "we" and "you" refer specifically to "CRM" (Creative Resource Management, Inc.) and "client" (Nashville Pro Hockey, LLC).

The contract contains no specified meaning of the terms "my hand" and "I" as same appear in paragraph VII(d).

Indeed, the well settled precedent in Tennessee suggests that a corporate officer's signature preceeded by a corporation's name and followed by a designation of the signer's corporate capacity is evidence that the signer was acting as an agent of the corporation rather than individually. *See Bill Walker & Assoc., Inc. v. Parrish*, 770 S.W.2d 764, 770 (Tenn. App. 1988); *Anderson v. Davis*, 34 Tenn. App. 116, 120, 234 S.W.2d 368, 369-70 (1950). This rule, however, must yield where the language of the contract compels a different conclusion. *Bill Walker & Assoc. v. Parrish*, 770 S.W.2d 764 (Tenn. Ct. App. 1989).

The language of the contract involved in the case at bar distinguishes this case from the general rule. This case concerns a contract which contains personal guarantee language in the body of the contract.

The words "I personally guarantee any and all payments payable as represented and outlined in this agreement . . . " as same appear in paragraph VII(d) of the contract reflect indisputably a guarantee by someone. Soskin insists that he signed only as a representative of the limited liability company. CRM insists that his signature imposes personal liability upon him.

This court has held that the very nature of a guarantee is the obligation of a guarantor in addition to the obligation to be secured. *Villines v. Parham-Lindsey Groc. Co.*, 6 Tenn. App. 254 (1927).

"A guaranty obligating only the corporation would not in any way add security to the obligation of the corporation, because the corporation was already fully obligated as principal." *Cone Oil Co., Inc. v. Green*, 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983).

The *Cone* court concludes that " . . . a guaranty of one's own obligation is an exercise in futility." 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983).

*Cone* finds strong support in other jurisdictions. In *Kordick v. Merchants National Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, the Indiana Court

of Appeals was called upon to determine whether or not the signature of Nicholas Kordick as "president" bound him personally as guarantor of the debt of his corporation "Fortune". The corporation defaulted and bankrupted and the bank brought suit against Kordick individually on the guarantee. Relying on *Roy v. Davidson Equipment*, 423 So.2d 496 (Fl. App. 1982), the *Kordick* court held:

> In the case at hand, it would likewise be meaningless for Fortune to guarantee its own debt because it would add nothing to the existing obligation to Merchants. Moreover, the guaranty obligation was not affected by the release of the indebtedness of the borrower -- Fortune -- an obvious paradox if Fortune were the guarantor. Thus, we must conclude the language of the guaranty specifically negates the signature as having been made in a representative capacity, and Kordick was personally obligated on the guaranty agreement.

496 N.E.2d 119, 124 (Ind. App. 1986).

Other cases applying the same rule are *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259 (Ind. Ct. App. 1993); *Roy v. Davidson Equipment, Inc.*, 423 So.2d 496 (Fla. Dist. Ct. App. 1982); *Ricker v. B-W Acceptance Corp.*, 349 F.2d 892 (10th Cir. 1965) and *Dann v. Team Bank*, 788 S.W.2d 182 (Tex. App. 1990).

In each of the foregoing cases the guaranty agreement was considerably more detailed than the guaranty agreement in this case but the stark fact is that the words "I personally guarantee" are meaningless if applied to Nashville Pro Hockey, LLC and not to Barry Soskin individually. We would simply have another *Cone* "exercise in futility".

Mr. Soskin attempts to argue that the placement of the guarantee language is somehow deceptive in that it appears in the body of the contract as opposed to the end of the agreement near the parties' signatures. In the case at bar we do not find the location of the personal guaranty language inappropriate. The guaranty language of paragraph VII(d) is not inconspicuous and hidden but rather in the same format as all of the other provisions of the contract. *One Stop Supply, Inc. v. Ransdell*, 1996 WL 187576 (Tenn. Ct. App. 1996). Parties who sign contracts are presumed to know the contents of the documents they sign. *See Beasley v. Metropolitan Life Ins. Co.,* 190 Tenn. 227, 232, 229 S.W.2d 146, 148 (1950);

*DeFord v. National Life & Accident Ins. Co.,* 182 Tenn. 255, 166, 185 S.W.2d 617, 621-22 (1945).

"The law imputes to contracting parties an intention corresponding to the reasonable meaning of their words and acts. *Sutton v. First National Bank of Crossville*, 620 S.W.2d 526, 530 (Tenn. Ct. App. 1981)." ***Bill Walker & Assoc. v. Parrish***, 770 S.W.2d 764, 770 (Tenn. Ct. App. 1989).

In addition, courts must consider the entire contract when determining the meaning of its terms. ***See Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.,*** 690 S.W.2d 231, 237 (Tenn. 1985). We may not ignore any contractual provisions, giving contractual terms their natural and ordinary meaning, construing provisions harmoniously in order to give effect to all provisions and avoiding the creation of internal conflicts. ***See Wilson v. Moore***, 929 S.W.2d 367, 373 (Tenn. App. 1996).

Since the words "I personally guarantee" cannot refer to Nashville Pro Hockey, LLC and retain any meaning at all in the context of this agreement, they must of necessity reflect the personal guarantee of Barry Soskin.

The judgment of the trial court is reversed and summary judgment granted to Creative Resource Management, Inc., against Defendant Barry Soskin. The case is remanded to the trial court for further proceedings with costs assessed to the appellant.

_____
WILLIAM B. CAIN, JUDGE

CONCUR:

_____
WILLIAM C. KOCH, JR., JUDGE

_____
HENRY F. TODD, JUDGE