IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 27, 2002 Session

**KELSO OIL COMPANY, INC. v.
EAST WEST TRUCK STOP, INC., ET AL.**

**Appeal from the Chancery Court for Knox County**
**No. 143908-3     Sharon Bell, Chancellor**
<u>**FILED NOVEMBER 14, 2002**</u>

**No. E2001-02090-COA-R3-CV**

---

This main issue in this appeal involves an Unconditional Guaranty signed by Frank Webb ("Webb"), the president and owner of East West Truck Stop, Inc. In this document, Webb guaranteed the debt of the "buyer", which was identified as "Frank Webb d/b/a East West Truck Stop." The "buyer", however, was the corporate entity, East West Truck Stop, Inc. The Trial Court concluded the parties intended for the document to state the "buyer" was the corporate entity and entered judgment against Webb personally. Webb appeals, claiming the Trial Court improperly used parol evidence to supply an essential term of the Unconditional Guaranty (i.e. the identity of the "buyer") in violation of the Statute of Frauds. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the
Chancery Court Affirmed; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Gary D. Copas, Nashville, Tennessee, for the Appellants East West Truck Stop, Inc., and Frank Webb.

Robert S. Stone and Katherine M. Hamilton, Knoxville, Tennessee, for the Appellee Kelso Oil Company, Inc.

**OPINION**

<u>**Background**</u>

Kelso Oil Company, Inc., ("Kelso") filed a complaint alleging it supplied fuel from August 1997 through July 1998, to East West Truck Stop, Inc., pursuant to an open account which

required payment within ten days from the date of the invoice. After East West Truck Stop, Inc., fell behind in its payments, Webb signed an "Unconditional Guaranty" on March 4, 1998, which provides, in relevant part, as follows:

> IN CONSIDERATION OF THE SALE OF GOODS BY KELSO OIL COMPANY ("KELSO") TO FRANK WEBB, DBA EAST WEST TRUCK STOP ("BUYER") AND OTHER GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH ARE HEREBY ACKNOWLEDGED, THE UNDERSIGNED, AS A DIRECT AND PRIMARY OBLIGATION, GUARANTEES TO KELSO AND ANY ASSIGNEE OF KELSO THE PROMPT PAYMENT OF ALL SUMS OWED BY BUYER TO KELSO, FOR WHATEVER REASON OR FROM WHATEVER SOURCE. THE UNDERSIGNED PROMISES TO PAY ALL OF . . . [KELSO'S EXPENSES], INCLUDING ATTORNEY'S FEES, INCURRED BY KELSO IN ENFORCING THIS GUARANTY.

The Unconditional Guaranty was signed by Frank Webb d/b/a East West Truck Stop. Plaintiff sued East West Truck Stop, Inc., on the open account and also sued Webb personally on the Unconditional Guaranty.

Defendants filed an answer to the Complaint, essentially denying any liability on their part. Defendants asserted several defenses, including a defense that enforcement of the Unconditional Guaranty was prohibited by the Statute of Frauds. Defendants also filed a counterclaim asserting the interest rate charged by Plaintiff was usurious.

Plaintiff filed a motion for summary judgment on its claims against both Defendants. The Trial Court granted the motion with respect to East West Truck Stop, Inc., and entered judgment for Plaintiff in the amount of $119,241.19, exclusive of late charges and/or attorney's fees. No appeal has been taken from this portion of the judgment entered against East West Truck Stop, Inc. After this partial summary judgment was granted, the only issues remaining for trial were whether Webb was personally liable for the outstanding balance and for attorney's fees pursuant to the Unconditional Guaranty, whether both Defendants were liable for "late charges," and Defendants' counterclaim asserting the interest rate was usurious.

Webb testified via deposition. Webb is the President and owner of East West Truck Stop, Inc. Webb worked at different jobs over the course of the years, some of which involved banks and other lending institutions. Webb admitted that while operating businesses prior to owning East West Truck Stop, Inc., he "at some time or another" had to sign a personal guarantee in order for his business to receive a loan. He is aware of the meaning of "personal guaranty." According to Webb, East West Truck Stop, Inc., conducted business as East West Truck Stop. When asked in what capacity he signed the Unconditional Guaranty, Webb stated:

Probably the way it looks as Frank Webb doing business as East West Truck Stop that Frank Webb is the main entity. But East West Truck Stop is a corporation, and I'm signing this as the president of the corporation. That was my understanding.

Webb went on to add he did not sign the Unconditional Guarantee in a personal capacity and did not intend to guarantee personally the corporate debt to Plaintiff. When asked why he signed the Unconditional Guarantee and other documents, Webb stated he did not want Kelso to put any "pressure" on him. Kelso indicated if he would sign the documents, "that would kind of take the pressure off." After he signed the documents, Webb admitted this took the pressure off as he had hoped.

James Newcomb ("Newcomb") testified. Newcomb is a salesperson for Kelso and has worked for that company for twenty-one years. Newcomb testified to problems Kelso encountered when trying to get paid for the fuel it supplied to East West Truck Stop, Inc. Newcomb and other Kelso employees contacted Webb many times and Webb kept promising to pay the balance. Newcomb presented Webb with a promissory note and the Unconditional Guaranty and went over the terms of these documents with Webb, who agreed to sign them. These documents were prepared by Kelso's general manager. When Webb signed the documents, credit was no longer being extended to East West Truck Stop, Inc. Newcomb testified he discussed these documents with Webb, and the purpose of the Unconditional Guaranty was for Webb to guarantee the amount that was owed to Kelso. Newcomb acknowledged both the buyer and the guarantor on the Unconditional Guaranty are identified as Frank Webb d/b/a East West Truck Stop. Newcomb did not prepare the documents and could not explain why the buyer and the guarantor were identified as the same.

The Trial Court concluded "Frank Webb, d/b/a East West Truck Stop" constituted a latent ambiguity which allowed explanation via parol evidence. According to the Trial Court, the parties meant the corporate defendant to be the "buyer". The Trial Court also found there was sufficient consideration for the Unconditional Guaranty. The Trial Court concluded Webb was personally liable pursuant to the Unconditional Guaranty. Judgment was entered against Defendants for $119,241.19, and for $69,744.12 in late charges.[1] Plaintiff also was awarded a judgment against Webb for attorney fees. The Trial Court dismissed Defendants' counterclaim.

Webb appeals, claiming the Statute of Frauds prohibited the Trial Court's admitting parol evidence to explain the terms of the Unconditional Guaranty. Webb also claims the Trial Court erred in finding adequate consideration to support the Unconditional Guaranty. Both Defendants appeal claiming the Trial Court erred in not finding the late charges to be interest and in violation of the usury laws.

---

[1] In order to correct a clerical error, the judgment against East West Truck Stop, Inc., was entered this second time.

## Discussion

The factual findings of the Trial Court are accorded a presumption of correctness, and we will not overturn those factual findings unless the evidence preponderates against them. *See* Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). With respect to legal issues, our review is conducted "under a pure *de novo* standard of review, according no deference to the conclusions of law made by the lower courts." *Southern Constructors, Inc. v. Loudon County Bd. Of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

It is undisputed that East West Truck Stop, Inc., is a corporation. It also is undisputed that Frank Webb does not do business as East West Truck Stop, but the corporation does. As a result, "Frank Webb d/b/a East West Truck Stop" does not exist as a separate legal entity. When the Unconditional Guaranty was drafted, for some reason not explained in the record, "Frank Webb d/b/a East West Truck Stop" was identified as both the buyer and the obligor. Webb testified he never intended in signing the various documents to bind himself personally but, rather, was signing these documents as an officer of the corporation. Thus, according to Webb's testimony, when he signed the Unconditional Guaranty, the corporation was guaranteeing its own obligation.

Webb argues since the Trial Court had to supply an essential term of the Unconditional Guaranty, i.e., who was the "buyer", the Statute of Frauds prohibits enforcement of this document. *See, e.g., Lambert v. Home Federal Sav. & Loan Ass'n*, 481 S.W.2d 770, 773 (Tenn. 1972)("The general rule is that the memorandum, in order to satisfy the statute, must contain the essential terms of the contract, expressed with such certainty that they may be understood from the memorandum itself or some other writing to which it refers or with which it is connected, without resorting to parol evidence. A memorandum disclosing merely that a contract had been made, without showing what the contract is, is not sufficient to satisfy the requirement of the Statute of Frauds that there be a memorandum in writing of the contract.").

In relevant part, the Statute of Frauds provides:

> **Writing required for action.** – (a) No action shall be brought:
>
> (2) To charge the defendant upon any special promise to answer for the debt, default, or miscarriage of another person;… unless the promise or agreement, upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some other person lawfully authorized by such party.

Tenn Code Ann. § 29-2-101.

Webb argues the Trial Court essentially changed the identity of the "buyer" on the Unconditional Guaranty when it concluded the buyer whose debt Webb was guaranteeing was the corporate entity. We will assume the identity of the buyer is an essential term of the Unconditional Guaranty. What we must decide then is whether the Trial Court committed reversible error in finding the "buyer" to be East West Truck Stop, Inc.

In *Creative Resource Management, Inc., v. Soskin*, No. 01-A-01-9808-CH-00016, 1998 Tenn. App. LEXIS 788 (Tenn. Ct. App. Nov. 25, 1998), *no appl. perm. appeal filed*, we observed:

> This court has held that the very nature of a guarantee is the obligation of a guarantor in addition to the obligation to be secured. *Villines v. Parham-Lindsey Groc. Co.*, 6 Tenn. App. 254 (1927).
>
> "A guaranty obligating only the corporation would not in any way add security to the obligation of the corporation, because the corporation was already fully obligated as principal." *Cone Oil Co., Inc. v. Green*, 669 S.W.2d 662, 664 (Tenn. Ct. App.1983).
>
> The *Cone* court concludes that " ... a guaranty of one's own obligation is an exercise in futility." 669 S.W.2d 662, 664 (Tenn. Ct. App. 1983).
>
> *Cone* finds strong support in other jurisdictions. In *Kordick v. Merchants National Bank & Trust Co. of Indianapolis*, 496 N.E.2d 119, the Indiana Court of Appeals was called upon to determine whether or not the signature of Nicholas Kordick as "president" bound him personally as guarantor of the debt of his corporation "Fortune". The corporation defaulted and bankrupted and the bank brought suit against Kordick individually on the guarantee. Relying on *Roy v. Davidson Equipment*, 423 So. 2d 496 (Fl. App. 1982), the *Kordick* court held:
>
>> In the case at hand, it would likewise be meaningless for Fortune to guarantee its own debt because it would add nothing to the existing obligation to Merchants. Moreover, the guaranty obligation was not affected by the release of the indebtedness of the borrower--Fortune--an obvious paradox if Fortune were the guarantor. Thus, we must conclude the language of the guaranty specifically negates the signature as having been made in a representative

> capacity, and Kordick was personally obligated on the
> guaranty agreement.
>
> 496 N.E.2d 119, 124 (Ind. App. 1986).
>
> Other cases applying the same rule are *Beradi v. Hardware Wholesalers, Inc.*, 625 N.E.2d 1259 (Ind. Ct. App. 1993); *Roy v. Davidson Equipment, Inc.*, 423 So. 2d 496 (Fla. Dist. Ct. App. 1982); *Ricker v. B-W Acceptance Corp.*, 349 F.2d 892 (10th Cir. 1965) and *Dann v. Team Bank*, 788 S.W.2d 182 (Tex. App. 1990).

*Creative Resource Management,* 1998 Tenn. App. LEXIS 788 at *5, *6.

Webb admitted East West Truck Stop, Inc., did business as East West Truck Stop. We find no basis to allow the corporation to conduct business under an assumed name and then prohibit enforcement of the Unconditional Guaranty because the assumed name, rather than the corporate name, was utilized in the document. The documents in the record show the "buyer" was the corporate entity. The invoices are sufficiently connected to the Unconditional Guaranty to show with certainty this essential term of the contract, who the "buyer" is. *See, e.g., Brandel v. Moore Mortgage and Investment Co.*, 774 S.W.2d 600, 605 (Tenn. Ct. App. 1989) ("[T]he requirement of the statute is met by the signatures of plaintiffs on some, although not all, of the documents. It is not necessary that the party to be charged sign each paper writing forming a part of the agreement where the writings on their face relate to one another.") Kelso's invoices show the fuel was "Sold To: East-West Truck Stop, Inc." When payment was not forthcoming, Kelso drafted the Unconditional Guaranty as additional security for the outstanding debt and, in return, took "the pressure off" Webb. Although it would have been more accurate to list the correct name of the corporate entity as the "buyer", we believe the "buyer" was sufficiently identified for purposes of satisfying the Statute of Frauds, especially in light of Webb's admission the corporation did business as East West Truck Stop. The Trial Court's concluding the "buyer" was the corporate entity and that Webb personally guaranteed this corporate debt prevented the Unconditional Guaranty from being "an exercise in futility." *Creative Resource Management, supra.* We affirm the Trial Court's judgment on this issue.

Webb's next argument centers around the Trial Court's conclusion there was adequate consideration to support the Unconditional Guaranty. Webb argues the "consideration for the guaranty as stated on the face of the instrument is the sale of goods (i.e. fuel) to Frank Webb d/b/a East West Truck Stop . . . , not to the customer shown on the invoices, East West Truck Stop Inc." Because the Trial Court found the consideration to be forbearance to pursue collection, Webb contends the Trial Court improperly used parol evidence to find consideration, in violation of the Statute of Frauds. We disagree. The Unconditional Guaranty states the consideration is the "sale of goods … and other good and valuable consideration." Webb admitted he signed the documents so Kelso would forbear taking legal action (i.e. not "pressure" him), and this result was achieved after he signed the document. This is certainly "other good and valuable consideration" to support

the agreement. We do not believe the Statute of Frauds required Kelso to list every possible form of consideration supporting the Unconditional Guarantee, assuming the consideration is required to be in writing. *See Love and Amos Coal Co. v. United Mine Workers of America,* 53 Tenn. App. 37, 56, 378 S.W.2d 430,439 (1963)(discussing cases which observed "it is not necessary that the consideration of the promise be stated in writing in order to maintain an action under the Statute of Frauds."). We also note that the record shows that Kelso continued, at least for some time after the execution of the Unconditional Guaranty, to sell goods to the "buyer."

The final issue on appeal is Defendants' claim the Trial Court erred in dismissing their counterclaim wherein they asserted the interest charged by Kelso was usurious and in violation of Tenn. Code Ann. § 47-14-101, *et seq.* In its judgment, the Trial Court awarded "late charges" on the balance owed on the invoices at the annual rate of 18%. Defendants claim the "late charges" were actually interest.[2] Kelso claims they were late charges and not interest, relying on *Wilson v. Dealy*, 222 Tenn. 196, 200, 434 S.W.2d 835, 837 (1968)("Whether a charge imposed because of late payment of a debt is compensation for the continued use of the money owed depends upon whether the late charge is made as consideration for an extension of the time for payment or as compensation for the damage done to the creditor by the debtor's failure to pay his debt when due."). The only argument advanced by Defendants on this issue is that the Trial Court found forbearance to be the consideration for the Unconditional Guaranty. Defendants argue, therefore, payment for this forbearance is properly classified as interest under the relevant statute. The Trial Court did find forbearance to be sufficient consideration for the Unconditional Guaranty. Plaintiff, however, is not seeking these specific damages or compensation based solely on the terms of the Unconditional Guaranty. Rather, this compensation is sought pursuant to the open account, payment of which was guaranteed by the Unconditional Guaranty. The late charges imposed by the invoices were not made as consideration for an extension of time for payment as the invoices, by their terms, never agreed to any extension of time for payment. The late charges under the invoices constitute compensation for the damage done to Kelso by the corporation's failure to pay the debt when due. *See Id.* As stated, the only argument advanced by Defendants is that the late charges awarded must constitute interest pursuant to the terms of the Unconditional Guaranty. Since the terms of the Unconditional Guaranty are not relevant insofar as to the purpose of the "late charges" provided for in the invoices, we reject this argument, and find no error by the Trial Court relevant to this issue.

---

[2] The parties stipulated at trial that the maximum interest rate Kelso would have been able to charge was 10% in accordance with Tenn. Code Ann. § 47-14-103(2), assuming this statute applies.

## **Conclusion**

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion. The costs on appeal are assessed against the Appellants East West Truck Stop, Inc., and Frank Webb, and their surety.

_____
D. MICHAEL SWINEY, JUDGE